**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FELICIA NICHOLS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>    Defendants. | Case No. 14-cv-03383-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 44] |

    Plaintiff Felicia Nichols brings this action following an encounter with San Jose Police officers in November 2012. Nichols brings suit under 42 U.S.C. § 1983 against the City of San Jose (the "City") and the individual police officers involved in the incident: Christopher Schipke and Officer Ferguson (collectively, "Officer Defendants") (collectively with the City, "Defendants"). The City and Officers Schipke and Ferguson seek summary judgment on all claims. *See generally* Mot., ECF 44. The Court has considered the briefing, the admissible evidence, and the argument presented at the hearing on March 23, 2017. For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.    FACTS[1]**

    On November 8, 2012, Nichols and her then-boyfriend David Cabrera were sitting in his car, which was parked across the street from and in front of Cabrera's mother's house, where Cabrera lived at the time. Nichols Decl. ISO Opp'n ("Nichols Decl.") ¶ 5, ECF 45-3; Cabrera Decl. ISO Opp'n ("Cabrera Decl.") ¶ 5, ECF 45-1. The two were discussing Nichols' molest at age 12, and Nichols was "very emotional." Nichols Decl. ¶¶ 2, 5. Nichols was in the passenger seat and Cabrera was in the driver's seat. *Id.* ¶ 5; Cabrera Decl. ¶ 4. Cabrera had parked his car close to the truck behind it. Cabrera Decl. ¶ 5; Ex. 1 to Clouse Decl. ISO Mot. ("Schipke Dep.")

---

[1] The facts set forth in this section are merely a summary of the facts and do not represent all facts, disputed or otherwise. Additionally, the facts are undisputed unless otherwise noted.

58:19–20, ECF 44-1.

Officers Schipke and Ferguson drove by Nichols and Cabrera sitting in their car at around 9:10 or 9:15 p.m.,[2] turned around at the end of the cul de sac, and parked next to the truck behind Cabrera's car. Nichols Decl. ¶¶ 5–6. Officer Schipke testified that they were in the area because Officer Ferguson had information regarding gang and narcotic activity there. Schipke Dep. 66:10–12. Officer Schipke also testified that he thought it was suspicious that the vehicle was "backed up" in a way that he could not see the back license plate and because there were two people in the car "perhaps evading police contact," so he and Officer Ferguson approached the vehicle. *Id.* 74:10–13, 77:6–15, 82:13–17.

The Officer Defendants approached the driver's side of the vehicle first. Nichols Decl. ¶ 6. Officer Ferguson asked Cabrera for his ID and asked him why he was in the area. *Id.* The parties dispute Cabrera's reaction. Nichols testified that Cabrera complied with Officer Ferguson's request, but Officer Schipke testified that Cabrera "was immediately confrontational." *Id.*; Schipke Dep. 83:13–18. At this point, Nichols asked to speak to the Officer Defendants' watch commander or someone who was their boss. Nichols Decl. ¶ 7; Ex. 4 to Clouse Decl. ISO Mot. ("Nichols Dep.") 110:2–12, ECF 44-1. Nichols then picked up her phone from under the emergency brake and began texting. Nichols Decl. ¶ 8.

When Nichols began texting, Officer Schipke walked around to the passenger side of the vehicle and asked for her ID. *Id.* ¶ 9; Schipke Dep. 88:3–5. Despite being told to get off the phone, Nichols continued texting. Nichols Decl. ¶ 9; Nichols Dep. 51:15–24, 52:8–11. Officer Schipke asked Nichols to give him the phone, which Nichols did not do. Nichols Decl. ¶ 9. Officer Schipke then demanded that Nichols get out of the car. Nichols Decl. ¶ 9; Nichols Dep. 52:18; Schipke Dep. 97:13–17. Nichols admits that she did not immediately exit the car, though the parties dispute how Nichols responded and what happened next. Nichols Decl. ¶ 9; Nichols Dep. 52:18–19; Schipke Dep. 97:13–17. Nichols testified that Officer Schipke then reached into the car through the open window, unlocked and opened the passenger door, grabbed and twisted

---

[2] Dispatch created the event at 9:19 p.m., which means that the officer called in the event a little before that time. Ex. 8 to Clouse Decl. ISO Mot. ("Harris Dep.") 26:18–23, ECF 44-1.

2

Nichols' right arm, and forcibly pulled her out of the car. Nichols Decl. ¶ 9; Nichols Dep. 52:19–21, 53:18–22. Officer Schipke disputes that he pulled her out of the vehicle—he testified that when he put his hand on her arm, Nichols complied with his order to get out of the car. Schipke Dep. 97:4–5; Ex. 1 to Frucht Decl. ISO Opp'n ("Schipke Dep. II") 97:22–98:4, ECF 45-2.

Once out of the vehicle, Nichols began screaming and crying, and asked for a female officer because she did not want to be touched by a man because she was a molest victim. Nichols Decl. ¶¶ 9, 10; Schipke Dep. 103:23–25. Nichols claims that Officer Schipke ignored her request for a female officer, and instead immediately turned her around and placed her in handcuffs. Nichols Decl. ¶ 9; Nichols Dep. 62:16–20. Nichols further testified that the handcuffs were so tight that they were painful and caused bruises. She told the officers that the handcuffs were too tight, but they ignored her. Nichols Decl. ¶ 9. Officer Schipke could not recall whether he put Nichols in handcuffs immediately or after some time. Schipke Dep. 102:4–6. The parties agree, however, that Officer Schipke conducted a pat search. Nichols Decl. ¶ 10; Schipke Dep. 100:12–22. Nichols was wearing yoga pants, flip fops, a skin-tight tank-top shirt that exposed her midriff, a zip-up sweatshirt, and no bra. Nichols Decl. ¶ 12; Nichols Dep. 58:17–22; Schipke Dep. 101:11–12 ("[s]he was wearing very . . . tight clothing); Schipke Dep. 101:15–17 ("she was wearing revealing clothing"). She testified that Officer Schipke placed his hands under her jacket, on her skin around her stomach area, and all around her waist, hips, front, and lower back. Nichols Decl. ¶ 10. Officer Schipke testified that he searched only her waistband. Schipke Dep. 101:15–16.

Sometime later, several other officers arrived. Nichols Decl. ¶ 12; Schipke Dep. 131:7. Nichols claims that Officer Schipke then conducted a second pat search, unzipping her jacket and the two pockets on her jacket; searching around her waist, hips, and back; touching her skin with his thumb under her shirt; and "with a full hand" touched both of her breasts on top of her shirt. Nichols Decl. ¶ 12; Nichols Dep. 90:4–91:24. Officer Schipke testified that he did not conduct a second pat search. Schipke Dep. 105:4–6.

Nichols testified that after the second pat search, Officer Schipke refused to zip up her sweatshirt and that the other officers stood in a semi-circle in front of her, staring at her, shining

3

flashlights up and down her torso, giggling, and laughing. Nichols Decl. ¶ 14. Nichols claims that she asked the officers to stop staring at her, but they ignored her. *Id.* ¶ 15. Because she was "humiliated and embarrassed," Nichols testified that she turned her head away from the officers, but Officer Schipke, who according to Nichols was doing paperwork, told her to "turn the fuck around." *Id.* Although Nichols testified that she did turn around, she "reflexively turned her head away once again." *Id.* At that point, Nichols asserts that Officer Schipke "turned [her] around to face the hood of the marked police car and slammed [her] upper body onto the hood of the car." *Id.*; Nichols Dep. 107:2–5. Nichols claims that when he slammed her onto the hood of the car, Officer Schipke pressed his private parts into her behind, and it felt to her that he was aroused. Nichols Decl. ¶ 15; Nichols Dep. 107:11–13. Officer Schipke testified that he never pushed her into the car and did not fill out any paperwork during the interaction. Schipke Dep. 108:9–13.

Nichols claims that after she had been detained in handcuffs for over an hour, Officer Ferguson told her she was free to go, even though she was still handcuffed. Nichols Decl. ¶ 16. Officer Schipke testified that the entire encounter lasted only 40 minutes to an hour, and that she would not have been in handcuffs for the entire duration. Schipke Dep. 107:1–2. After Officer Ferguson told her she was free to go, a police sergeant arrived, and Nichols asked to speak with him. Nichols Decl. ¶ 16. Nichols asked the sergeant to remove the handcuffs, and the sergeant ordered an officer to do so. *Id.*; Nichols Dep. 111:5–14. After discussing the incident with the sergeant, Nichols walked back to Cabrera's car and waited there until all of the officers left. Nichols Decl. ¶ 17.

Nichols filed this lawsuit on July 25, 2014. Compl., ECF 1. The First Amended Complaint ("FAC") asserts four claims under 42 U.S.C. § 1983 against the Officer Defendants for deprivation of the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment, and the right to be free from retaliation for exercising the right to petition the government, as guaranteed by the First Amendment. *See generally* FAC, ECF 10. Nichols also asserts a claim under section 1983 against the City for its pattern and practice of ongoing constitutional violations. *Id.* ¶¶ 43–44.

**II. LEGAL STANDARD**

4

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Defendants move for summary judgment on all claims. *See generally* Mot. Specifically, they ask the Court to address five questions. *Id.* at 1. The Court generally seeks to respond to the motion as submitted by the moving party. However, in this case, Defendants have improperly

5

framed the questions they ask the Court to consider. For example, Issue Two is posited as follows: "Whether, in light of Plaintiff's poor cooperation and screaming, it was reasonable for officers to handcuff Plaintiff, search her, and conduct sobriety tests without exceeding the bounds of a valid investigatory stop." *Id.* Because these questions are posed as if the Court is to answer them construing the evidence in the light most favorable to the moving party, which is not the standard, *see City of Pomona*, 750 F.3d at 1049, the Court instead considers whether any of Plaintiff's claims are appropriate for resolution on summary judgment.

Before addressing the substance, the Court addresses two preliminary matters. First, Defendants indicate that that Plaintiff's counsel advised them that Nichols does not intend to pursue the Fourth and Fifth Claims alleged in the FAC, for alleged violation of Nichols' First Amendment rights and for *Monell* liability against the City. Mot. 8 n.6. Nichols confirms this in her supplemental brief. Pl.'s Suppl. Br. 1, ECF 52. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the Fourth and Fifth Claims alleged in the FAC.

Second, in their motion, Defendants argue that Nichols does not claim that Officer Ferguson played any role in the encounter aside from initiating contact and questioning Cabrera, and thus, summary judgment is appropriate. Mot. 20. Nichols does not contest this assertion. For this reason, and because none of the evidence details any contact between Officer Ferguson and Nichols, the Court GRANTS the motion for summary judgment as to all claims against Officer Ferguson. Thus, the only claims remaining are those against Officer Schipke alone.

Officer Schipke first argues that there is no evidence that he violated Nichols' constitutional rights, and therefore he cannot be liable under § 1983. *See* Mot. 9–20. Second, he contends that even if a constitutional violation occurred, he is entitled to qualified immunity because "it was not 'beyond debate' in November 2012 that officers confronted with this situation could not take any of the actions of which Plaintiff complaints." *Id.* at 21. The Court first addresses whether Officer Schipke has demonstrated that he is entitled to judgment as a matter of law based on undisputed material facts regarding the alleged constitutional violations, and next considers whether, even if there was a constitutional violation (which he denies), he is entitled to qualified immunity.

### A. Constitutional Violation

#### i. Initial Detention

Officer Schipke first argues that he had reasonable suspicion to detain Nichols because she and Cabrera were in a car parked so as to hide the license plate in an area known for vehicle theft and drug crime, among other reasons. Mot. 1. Because there are disputed issues of material fact, the Court cannot conclude that Officer Schipke had reasonable suspicion to detain Nichols, and further cannot conclude that Officer Schipke did not violate her Fourth Amendment rights.

#### a. Reasonable Suspicion

"The Fourth Amendment is not implicated when law enforcement officers approach an individual in public and ask him if he is willing to answer questions," regardless of whether the individual is on foot or in a car parked in a public place. *United States v. Mays*, No. CR-07-00295, 2008 WL 111230, at *3 (N.D. Cal. Jan. 9, 2008) (citing *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007)); *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) ("Absent indicia of force or aggression, a request for identification or information is not a seizure or an investigatory stop."). Accordingly, this case begins when Officer Schipke allegedly pulled Nichols out of the vehicle.[3]

The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). As is relevant here, a police officer must have a "reasonable suspicion" that a violation of the law has occurred before detaining a person. *Bingham v. City of Manhattan Beach* 341 F.3d 939, 946 (9th Cir. 2003) (citing *Whren v. United States,* 517 U.S. 806, 809–10 (1996)), *abrogated on other grounds by Virginia v. Moore*, 553 U.S. 164 (2008), *as recognized in Edgerly v. City of San Francisco*, 599

---

[3] Drawing all reasonable inferences in the light most favorable to Nichols, Officer Schipke reached in through the car window, unlocked the door, pulled her out of the vehicle, and placed her in handcuffs in one, virtually simultaneous movement. Nichols Decl. ¶ 9; Nichols Dep. 52:19–21, 53:18–22, 62:16–20. Nichols was detained at this point.

7

F.3d 946, 956 n.14 (9th Cir. 2010); *see also Terry v. Ohio*, 392 U.S. 1 (1968). To form reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks omitted). "Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

Citing *United States v. Salcido*, 341 Fed. Appx. 344 (9th Cir. 2009), Officer Schipke argues that he had reasonable suspicion to detain Nichols. Mot. 9. To support this contention, Officer Schipke asserts that: (1) the incident occurred in a high-crime neighborhood, Schipke Dep. 66:10–12; (2) Cabrera parked his car close to the truck parked behind it, such that the Officer Defendants could not see his license plate, *id.* at 58:19–24; (3) two people were sitting in the car and appeared to be attempting to avoid detection, *id.* at 77:6–15; (4) Nichols was very upset and appeared fearful, *id.* at 91:16, 94:1–6; (5) Officer Schipke saw Nichols make "furtive movements" such as continually moving, reaching over to the center console, reaching under the seat, and grabbing her bag, *id.* at 89:13–22, 96:21–97:3; and (6) Nichols did not comply with Officer Schipke's commands. *Id.* at 96:21–97:3.

Although much of this testimony is undisputed, there are disputed issues of material fact. In her declaration, Nichols concedes that there had been a lot of break-ins in the neighborhood, she and Cabrera were sitting in the car talking, Cabrera parked his car "close" to the truck, she was emotional, she grabbed her cell phone while Cabrera was talking to Officer Ferguson, she searched for her ID in the car, and she did not immediately comply with Officer Schipke's commands to give him her phone and exit the vehicle. Nichols Decl. ¶¶ 7–9. Nevertheless, Nichols' account differs from Officer Schipke's account in at least two significant ways. First, Nichols testified that she was texting when Officer Schipke approached her, and only began looking around the car after he asked for her ID, which was either in the glove compartment or by Cabrera. *Id.* 50:7–19. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Nichols was not making furtive movements, but was instead reacting to

8

1 Officer Schipke's request to see her ID.

Second, relying on the Event Details Report and Event Chronology, Nichols disputes whether the officers could in fact see the rear license plate. *See* Opp'n 15, ECF 45; Ex. 2 to Frucht Decl. ("CAD Report"), ECF 45-2. In his deposition, Officer Schipke testified that "[i]t could take 15 seconds" to run a plate." Schipke Dep. II, at 60:1–6. And, the CAD report shows that the officers identified Cabrera's license plate within a several minutes of having called in the event. CAD Report 1 (identifying 5AVJ826, Cabrera's license plate, at 21:19); Harris Dep. 26:18–23 (stating that dispatch created the event at 9:19 p.m., which means the officers called in the event a little before that time). Drawing all reasonable inferences in favor of Plaintiff, as required on summary judgment, the Court concludes that a reasonable jury could find that the officers were able to see and run Cabrera's license plate within minutes of arriving at the scene, and knew at that time that the car was not stolen.

Given the identified factual disputes, the Court cannot conclude that no constitutional violation occurred. Moreover, Officer Schipke's reliance on *Salcido* is unavailing in light of these factual disputes. In *Salcido*, the Ninth Circuit affirmed the district court's denial of the defendant's motion to suppress evidence obtained during an investigatory stop of the SUV in which she was a passenger. 341 Fed. Appx. 344. There, the SUV was parked in the darkened parking lot of a post office that was closed at the time. *Id.* at 345. The Ninth Circuit held that a *Terry* stop was justified given the fact that police officers were aware of previous reports of mail theft at the post office, the officers knew it was unusual for a car to be alone in the parking lot at that time of night, and they observed the SUV turn on its headlights as it left the parking lot. *Id.* at 345 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Here, although Officer Schipke was aware of possible criminal activity in the area, the situation is distinguishable from *Salcido*. First, Nichols and Cabrera were parked in a residential neighborhood, in front of his house, and Cabrera had already informed the officers that he lived there. Second, drawing all reasonable inferences in favor of Plaintiff, the officers could see the vehicle's license plate and had already obtained a dispatch report that did not alert them that the car was reported stolen.

Although the Court acknowledges that Defendants have submitted strong evidence to

9

1  support Officer Schipke's reasonable suspicion to detain Nichols, the evidence is not undisputed.

2  The Court concludes that a reasonable jury could conclude that upon learning that Cabrera lived in

3  the neighborhood and the vehicle was not reported as stolen, reasonable suspicion ceased before

4  Nichols was detained. As to Nichols' conduct immediately prior to her detention, the facts are

5  disputed so as to defeat summary judgment on this issue.

6  For the foregoing reasons, the Court DENIES Officer Schipke's motion for summary

7  judgment on the ground that he had reasonable suspicion to detain Nichols.

### b. Scope of the Detention

Officer Schipke next contends that his conduct was reasonable and did not exceed the bounds of a valid investigatory stop. Mot. 10–12, 16–19. "A detention can be unreasonable 'either because the detention itself is improper or because it is carried out in an unreasonable manner.'" *Davis v. United States*, No. 15-55671, 2017 WL 1359482, at *4 (9th Cir. Apr. 13, 2017) (citing and quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). For instance, detentions that are "unnecessarily painful [or] degrading" and "lengthy detentions[ ] of the elderly, or of children, or of individuals suffering from a serious illness or disability raise additional concerns." *Foxworth*, 31 F.3d at 876. Thus, a "seizure must be 'carefully tailored' to the law enforcement interests . . . that justify detention [.]" *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Cir. 2003) (citation omitted). Courts determine reasonableness "from the perspective of a reasonable officer on the scene." *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

Officer Schipke contends that it was "reasonable to search Plaintiff as he did," because Nichols was moving her hands around the car and not cooperating with officers. Mot. 16. The Court cannot agree that the scope of the detention was constitutional as a matter of law given the disputed issues of fact. As previously explained, the parties dispute whether Nichols was "furtively" moving her hands around the car or responding to Officer Schipke's request to produce identification. Moreover, Nichols disputes that she was not cooperating with officers. *See* Nichols Decl. ¶ 8. Nichols' testimony indicates merely that she did not "immediately" comply with Officer Schipke's request to get out of the car. Nichols Decl. ¶ 8. Perhaps more importantly, Officer Schipke's account of the search differs significantly from Nichols' account. *Compare*

Nichols Decl. ¶ 12 (stating that Officer Schipke searched her twice and touched her breasts with his full hands), Nichols Dep. 90:4–91:24 (same), *with* Schipke Dep. 105:4–6 (stating that he did not conduct a second search). Accordingly, the Court DENIES Officer Schipke's motion for summary judgment on the ground that it was reasonable to search Nichols as he did.

### ii. De Facto Arrest

Officer Schipke does not seek summary judgment on the ground that there was probable cause to arrest Nichols. Instead, he asserts that neither the use of handcuffs nor the length of the detention transformed it into an arrest. Mot. 10–14. Therefore, this order focuses on whether Office Schipke reasonably believed that the tactics used were necessary to protect officer safety such that the detention remained an investigatory detention that required only reasonable suspicion. Insofar as Defendants offer no evidence or argument to support a finding of probable cause, if there is evidence sufficient to support a dispute on this issue, it must be presented to a jury.

The Ninth Circuit has explained that there is "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988). To determine whether a detention amounts to a de facto arrest, courts look to the totality of the circumstances. *United States v. Ricardo D.*, 912 F.2d 337, 342 (9th Cir. 1990); *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014). When making this determination, courts consider the "intrusiveness of the methods used in light of whether these methods were reasonable given the specific circumstances." *Green*, 751 F.3d at 1047.

Although handcuffing is not part of a typical *Terry* stop, an officer may use tactics during the course of an investigatory stop to restrain a suspect when the officer reasonably believes force is necessary to protect the officer's own safety or the safety of the public. *Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995); *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982). Special circumstances might justify the use of "especially intrusive" tactics related to an investigatory stop such as: "(1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the police have information that the suspect is currently armed; (3) where the stop closely follows a violent crime; and (4) where the

11

police have information that a crime that may involve violence is about to occur." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996).

Here, as previously discussed, the circumstances giving rise to Plaintiff's detention are disputed. *See supra*, at 8–9 (discussing Nichols' alleged "furtive movements" and resistance to the officer). Additional factual questions arise as to the length of the detention. In his deposition, Officer Schipke testified that he believed he was at the scene for "40 minutes to an hour." Schipke Dep. 107:1–2. Nichols, however, submits a declaration that she was detained and in handcuffs for over an hour. Nichols Decl. ¶ 16. The length of time is particularly important in light of the apparently undisputed fact that Nichols remained in handcuffs for the duration of her detention.[4] *United States v. Mayo*, 394 F.3d 1721, 1276 (9th Cir. 2005) ("Although the duration of detention bears on whether a *Terry* stop is justified, there is no strict time requirement." (citation omitted)).

To justify the length of the detention, Officer Schipke points to the Ninth Circuit's decisions in *United States v. Mayo* and *United States v. Richards*, 500 F.2d 1025 (9th Cir. 1974). *See* Mot. 12–13. In those cases, however, unlike the present case, the officers articulated "new grounds for suspicion of criminal activity," that continued to unfold as the investigation proceeded or some other rationale for a prolonged *Terry* stop. *See Mayo*, 394 F.3d at 1276; *Richards*, 500 F.2d at 1029 (finding that the suspects' "implausible and evasive responses . . . created even more reason for the investigation being pursued further"). More recently, in *Davis v. United States*, the Ninth Circuit found that a two hour detention, in public, of an elderly woman who had urinated in her pants was unreasonably prolonged and unnecessarily degrading because the federal agent had no law enforcement interest in detaining her—the suspected illicit item had been seized and the suspect had been searched for other weapons and contraband. 2017 WL 1359482, at *5–6.

Here, it is undisputed that Officer Schipke had conducted a pat search immediately after Nichols exited the car. Nevertheless, the parties dispute whether Officer Schipke had a further law

---

[4] "In assessing whether a detention is too long in duration to be justified as an investigative stop," the inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *Haynie v. Cty. of Los Angeles*, 339 F.3d 1071, 1076 (9th Cir. 2003) (noting that a *Terry* stop does not have rigid time constraints so long as the officer conducts the investigation in a diligent and reasonable fashion).

12

enforcement interest in detaining her.  Officer Schipke contends that he wanted to determine whether she was a domestic violence victim or was using illegal substances.  Mot. 13.  Officer Schipke also testified that he was not certain she was unarmed.[5]  Schipke Dep. 101:24–25 ("After the pat-down, I was more confident [that Nichols was unarmed], but you can hide a lot of weapons."); *see also* Reply ISO Mot. 5, ECF 47.  Nichols contends, however, that after the detention began (and possibly before), it was immediately clear that no crime or violation had occurred and that she was unarmed, but the officers continued to detain her for over an hour anyway.  Opp'n 15.  Accordingly, and in light of the factual disputes, the Court cannot conclude that Officer Schipke's conduct was reasonable, and thus complied with the Fourth Amendment.  Thus, the Court DENIES Officer Schipke's motion for summary judgment on this ground.

### iii. Excessive Force

Officer Schipke argues that Nichols' claim for excessive force fails because her claimed injuries are not supported by medical records or other evidence showing that she was injured.  Mot. 14 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)); *id.* at 14–15; Reply ISO Mot. 8.  A claim of excessive force brought against police officers must be analyzed under the Fourth Amendment's "reasonableness" standard.  *Connor*, 490 U.S. at 395; *Smith v. City of Hemet*, 394 F.3d 689, 700–01 (9th Cir. 2005).  The "objective reasonableness" of an officer's use of force in a particular case is determined "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  *Connor*, 490 U.S. at 396–97.  "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases."  *Green*, 751 F.3d at 1049 (internal quotations omitted); *see also Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly").

---

[5] Officer Schipke also contends that Nichols' detention was extended by 20 minutes because she requested to speak with a sergeant.  Mot. 13.  However, once Nichols had been searched for weapons with none found, Officer Schipke could not reasonably believe that the use of handcuffs was necessary to protect his own safety or the safety of the public.  *Davis*, 2017 WL 1359482, at *5; *McArthur v. City & Cty. of San Francisco*, 190 F. Supp. 3d 895, 903 (N.D. Cal. 2016).

13

Contrary to Officer Schipke's assertion, Nichols' failure to provide medical records to support her claim of injuries is not fatal to her claim for two reasons. First, although *Arpin* suggests that medical records showing injury are necessary to succeed on a claim for excessive force, other Ninth Circuit cases suggest otherwise. *See, e.g.*, *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007) (excessive force found where officers kept an eleven year old child handcuffed and pointed their weapons at him "even after it was apparent that he was a child and was not resisting them or attempting to flee"); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014–15 (9th Cir. 2002) (en banc) (holding that the pointing of a gun at someone may constitute excessive force even it does not cause physical injury). Second, unlike in *Arpin*, Nichols has set forth specific facts disputing Officer Schipke's version of events and has testified about the injuries she suffered, and thus, the claims are not conclusory. *See* Nichols Decl. ¶¶ 9, 15; Nichols Dep. 45:6–20, 121:1–22; *cf. Arpin*, 261 F.3d at 922 (finding conclusory allegations of injury insufficient to withstand summary judgment on an excessive force claim). For example, Nichols offers undisputed evidence that she told Officer Schipke that the handcuffs were too tight, but he ignored her.[6] Nichols Decl. ¶ 9. Thus, Plaintiff has put forward enough evidence to create a triable issue of fact on this issue, and DENIES Officer Schipke's motion for summary judgment on this ground.

### iv. "Gratuitous Touching"

Officer Schipke argues that Nichols' allegations that he engaged in "gratuitous touching" by touching her beneath her shirt, unzipping her jacket, touching her breasts, and pressing his aroused body into her, if true, constitute only a de minimis intrusion of her person, and therefore are not actionable. Mot. 17–18; *see also* Opp'n 20.

Because the alleged touching occurred after Officer Schipke detained Nichols, her claim arising out of this conduct is analyzed under the Fourth Amendment. *See Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) ("sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment"). "Beyond the specific

---

[6] The Ninth Circuit has held that excessively tight handcuffing can be considered the use of excessive force when it causes injury or the officers ignore an individual's complaints about the handcuffs being too tight. *See, e.g.*, *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).

14

proscription of excessive force, the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity and other harassing and abusive behavior that rises to the level of unreasonable seizure." *Id.* at 878–79 (internal citation and quotation marks omitted). "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." *Id.* at 880; *see also Hicks v. Moore*, 422 F.3d 1246, 1253–54 (11th Cir. 2005) ("[N]ot every intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment. Some of these acts may be provably accidental or just too insignificant and thus within the range of constitutionally reasonable.").

Here, Nichols testified that Officer Schipke's conduct with plaintiff was sexual in nature rather than accidental or de minimis. She testified that during the second search Officer Schipke unzipped her jacket, rubbed the skin around her waist, stomach, and back, and touched around her breasts with "the full hand." Nichols Dep. 90:4–25. She further testified that it felt like Officer Schipke touched her breasts for "minutes." *Id.* at 91:10–24. Moreover, Nichols claims that when Officer Schipke slammed her against the hood of the police car it felt like he was aroused. Nichols Decl. ¶ 15; Nichols Dep. 107:11–13. Officer Schipke, however, testified that he did not conduct a second search, he pat-searched only her waistband, and that he did not push her into the car. Schipke Dep. 101:15–16, 105:4–6, 108:9–11. In light of these factual disputes, among potentially others, the Court cannot determine that the nature of the intrusion was de minimis or merely accidental.

In the motion, Officer Schipke suggests that the Court should rule in his favor because Nichols "does not even credibly claim that any officer touched her breasts." Mot. 18. To support this contention, Officer Schipke points to Nichols' prior statements, in which she "specifically told the Internal Affairs officer investigating her claims that she was not touched anywhere other than her waist." *Id.* Thus, he argues that Nichols' subsequent statements are an attempt to create a factual dispute by contradicting her earlier admission, which is impermissible. Mot. 18 (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). As a preliminary matter, Officer

15

Schipke's argument is unavailing because "[c]redibility determinations . . . are jury functions, not those of a judge [.]" *Anderson*, 477 U.S. at 255. Additionally, none of the transcripts that Officer Schipke submitted in support of his papers support the assertion that Nichols expressly stated that Officer Schipke touched *only* her waist. *See, e.g.*, Ex. 3 to Clouse Decl. ISO Mot. ("Interview with Internal Affairs") 25:21–25, ECF 44-1 ("[T]he both times that he patted me . . . I felt [his] hand on my skin."). The prior statements here thus appear to be incomplete, and are supplemented by the subsequent deposition testimony. Thus, the Court does not agree that Nichols' deposition testimony is self-serving and "flatly contradicts" her prior statements, as was the case in *Kennedy*.[7] *See* 90 F.3d at 1481. Accordingly, this issue is more properly determined by a jury at trial. The Court DENIES Defendant's motion for summary judgment on this ground.

### B. Clearly Established Right

Based on the foregoing discussion, the Court cannot conclude that Officer Schipke did not violate Nichols' constitutional rights. For this reason, the Court now must address whether, even if a constitutional violation occurred, Officer Schipke is entitled to qualified immunity.

A government official sued under § 1983 is entitled to qualified immunity unless the plaintiff shows that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). When addressing the second prong, a court may not define the constitutional right at a high level of generality, because "doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their

---

[7] Additionally, the prior statements in *Kennedy* were sworn statements. They are not so here.

16

conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

The Supreme Court recently reiterated that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court endeavors to do so here by identifying two alternatives that it must address.

First, the Court must determine whether it was clearly established that it was unlawful to detain an individual without reasonable suspicion. More precisely, was it clearly established that it was unlawful to detain an individual after determining that the primary circumstances initially giving rise to the officers' concerns (*i.e.*, suspicious persons loitering in a high crime neighborhood in a car parked so close to another car as to obscure the license plate suggesting a stolen vehicle) had resolved to show that the driver was in front of his own home and police dispatch did not have information that the vehicle was reported as stolen? Based on long-standing precedent, it was clearly established at the time of the incident that it is unlawful to detain an individual without reasonable suspicion. *Terry*, 392 U.S. 1. Thus, viewing the evidence in the light most favorable to the nonmoving party, the Court cannot find that Officer Schipke is entitled to qualified immunity regarding the initial detention.

Second, and alternatively, even if Officer Schipke had reasonable suspicion to initially detain Nichols, the Court must determine whether it was clearly established that it was unlawful to detain a crying and screaming woman in handcuffs for over an hour on a public street, while she stood in revealing clothing, to question her about whether she was a domestic violence victim or was using illegal substances, subject her to at least two pat searches, unzip her jacket and pockets thereto, touch her bare skin and her breasts over her shirt, and have an officer slam her against the hood of a police car and press his aroused genitals against her.

Officer Schipke argues that he is entitled to qualified immunity because it was not "beyond debate" in November 2012 that officers confronted with this situation could not take any of the

17

actions of which Plaintiff complaints. Mot. 21. Plaintiff asserts that Officer Schipke's argument lacks merit in light of the disputed issues of fact. Opp'n 21. In reply, Officer Schipke does not engage Plaintiff's contention, but rather cites *White v. Pauly*, for the proposition that he is entitled to qualified immunity because Nichols has failed to "identify a case where an officer acting under similar circumstances . . . was held to have violated" the Fourth Amendment. 137 S. Ct. at 552.

Contrary to what Officer Schipke argues, the Court does not read *White* to require the plaintiff in a section 1983 case to identify a case directly on point for a right to be clearly established. *Id.* at 551 ("[T]his Court's case law does not require a case directly on point for a right to be clearly established [.]" (citation and internal quotation marks omitted); *see generally Davis*, 2017 WL 1359482, at *1 (holding that a federal agent was not entitled to qualified immunity from suit for detaining an elderly woman in a parking lot for two hours, while she stood in urine-soaked pants, to question her, incident to a search, about her possession of a paperweight containing a rice-grained-sized bit of lunar material without identifying a case directly on point).

Moreover, the outcome of the qualified immunity analysis here hinges on several disputed facts: the length of the detention, the length of time Nichols was kept in handcuffs, the scope of the search (including whether Officer Schipke searched Nichols twice, held her breasts for "minutes," and pressed his aroused genitals into her), and the degree to which Nichols was or was not complying with Officer Schipke's orders.[8] As the *Davis* court concluded, qualified immunity is not established as a matter of law where the nonmoving party has raised genuine issues of material fact as to whether the detention was "unreasonably prolonged and degrading under *Foxworth.*" *Davis*, 2017 WL 1359482, at *6. Further, Justice Ginsberg's concurrence in *White* confirms that the per curium opinion "does not foreclose the denial of summary judgment" on qualified immunity where fact disputes exist on material issues." *White*, 137 S. Ct. at 553 (Ginsburg, J., concurring). Accordingly, and in light of the previously identified disputed issues of material fact, Officer Schipke's motion on this issue is DENIED.

**IV.    ORDER**

---

[8] This list is not intended to be exhaustive.

18

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment on Plaintiff's fourth and fifth claims, for alleged violation of Nichols' First Amendment rights and for *Monell* liability against the City, is GRANTED.

2. Defendants' motion for summary judgment is GRANTED as to Officer Ferguson.

3. Defendants' motion for summary judgment as to Officer Schipke is DENIED with respect to Plaintiff's first, second, and third claims.

**IT IS SO ORDERED.**

Dated: April 19, 2017

_____
BETH LABSON FREEMAN
United States District Judge